*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2138**

Pamela Jeanne Googe,
Relator,

vs.

Capstone Services, LLC,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed July 21, 2014
Affirmed
Hooten, Judge**

Department of Employment and Economic Development
File No. 31021987-4

Pamela Jeanne Googe, South St. Paul, Minnesota (pro se relator)

Capstone Services, LLC, St. Louis, Missouri (respondent employer)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Reyes, Presiding Judge; Hooten, Judge; and Kirk, Judge.

**HOOTEN**, Judge

Relator challenges the decision by an unemployment law judge (ULJ) that she was discharged for misconduct and is ineligible for unemployment benefits, arguing that she was unaware of the employer's policy regarding the proper use of its credit card and that her use of the credit card was condoned by her supervisor. Although relator is correct that the ULJ erred by failing to set forth a reason for crediting the employer's testimony over her testimony regarding the use of the credit card, relator was discharged for other acts of misconduct, which she does not dispute on certiorari review. Because these other acts of misconduct justify the ULJ's denial of unemployment benefits, we affirm.

**FACTS**

Capstone Services, LLC owns and manages group homes for mentally disabled adults. Relator Pamela Googe worked for Capstone as a site coordinator. She provided onsite management services, including overseeing Capstone residents' finances; coordinating the "prudent and safe receipt, handling, storage, disbursement, and documentation" of resident funds; and managing "the prudent spending and documentation of assigned financial resources within the limits set by the Program Director, including staffing complements, program accounts, and petty cash accounts."

Capstone terminated Googe's employment effective February 12, 2013. Her termination letter includes an attachment stating that Googe committed a "clear violation of [Capstone's] Policy and Procedure Management of Individual Funds" and setting forth a number of alleged violations, including purchasing items for residents using the

2

company's Sam's Club credit card, failing to document residents' financial transactions, attaching incorrect receipts to residents' monthly fund sheets, and signing checks on behalf of residents without being an authorized signer.

Googe applied and was initially determined eligible for unemployment benefits. Capstone appealed. Googe and Capstone representatives, including Frank Zallar, her supervisor, participated in a telephonic hearing before a ULJ.

Zallar testified that on January 23, 2013, Googe told Zallar that she was concerned that a resident at one of the group homes was missing clothes. Zallar asked Googe to look for the clothes and to contact him if she could not find them. Instead, Googe emailed Zallar's supervisor and alleged that Zallar told her not to file an incident report.

This incident prompted Zallar to review Googe's financial activity, including her use of a company-issued Sam's Club credit card. Zallar testified that Googe had a Sam's Club credit card to make bulk purchases for the company, but that it would be "[a]bsolutely" inappropriate to make purchases for individual residents. Zallar noticed that Googe had purchased items for the residents with the credit card. Zallar added, "I was aware that there had been occasions in the past where [Googe] had used Capstone funds to pay for consumer needs and she received retraining at that time. And as far as all the Sam's Club stuff I did not know until I saw the bills that I got from the finance director." In the past, Zallar retrained Googe on the relevant policies and procedures relating to the use of Capstone funds.

Zallar also reviewed the residents' bank statements and receipts. He testified that Googe was writing checks for individual residents even though she was not an authorized

3

signer. He also determined that resident funds were not accounted for, and that one resident was missing $287. Another Capstone employee testified that Googe violated Capstone's policy against commingling the residents' funds by making smaller purchases on single receipts for several residents at a time.

With the exception of the missing money from a resident's account, Googe did not dispute that she committed the alleged violations. She testified that she was not aware of a policy that prohibited using the Sam's Club credit card for purchases on behalf of individual residents. She explained that she would reimburse Capstone with funds from individual residents' account. She acknowledged that she "[p]robably" attended trainings on finances, but could not recall the content of those trainings. Googe testified emphatically that Zallar had full knowledge of her use of the Sam's Club credit card. Googe also admitted that she signed residents' checks without being authorized to do so, but claimed that Zallar was also aware of this practice. And Googe admitted that she was aware of the policy against commingling residents' funds for smaller purchases, conceding, "I guess I would say I probably was guilty of that."

On two occasions, Googe raised the missing-clothes issue involving Zallar. She claimed that Zallar directed her not to file an incident report and that she e-mailed Zallar's supervisor because she wanted to know whether to file an incident report. Toward the end of the hearing, Googe claimed that Capstone retaliated against her for contacting Zallar's supervisor regarding the missing clothes.

The record contains Capstone documentation on Googe's financial trainings. Googe did not object to the admission of these documents into evidence.

4

The ULJ found that Googe used the Sam's Club credit card for purchases made on behalf of individual residents, rather than for business purposes; that Googe failed to document residents' transactions; that Googe attached incorrect receipts to residents' monthly fund sheets; that a resident was missing nearly $300 due to Googe's oversight; that Googe knowingly signed residents' checks even though she was not an authorized signer; and that Googe commingled residents' funds by making combined purchases for multiple residents. The ULJ determined that Googe was discharged for employment misconduct, was ineligible for benefits, and had been overpaid $6,749. Googe requested reconsideration, but the ULJ affirmed its decision, adding that it found the employer's witnesses more credible than Googe on the disputed issue of whether Zallar was aware of and condoned Googe's conduct. Googe appeals by writ of certiorari.

**D E C I S I O N**

This court may affirm or remand the ULJ's decision, or it may reverse or modify the decision if the substantial rights of the petitioner may have been prejudiced because the findings, inferences, conclusion, or decision are, among other things, made upon unlawful procedure or are unsupported by substantial evidence in view of the entire record. Minn. Stat. § 268.105, subd. 7(d) (2012). Substantial evidence is defined as: "1. Such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; 2. More than a scintilla of evidence; 3. More than some evidence; 4. More than any evidence; and 5. Evidence considered in its entirety." *Cable Commc'ns Bd. v. Nor-West Cable Commc'ns P'ship*, 356 N.W.2d 658, 668 (Minn. 1984).

An applicant discharged from employment for employment misconduct is ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2012).

> Whether an employee committed employment misconduct is a mixed question of fact and law. Whether the employee committed a particular act is a question of fact. We view the ULJ's factual findings in the light most favorable to the decision, giving deference to the credibility determinations made by the ULJ. In doing so, we will not disturb the ULJ's factual findings when the evidence substantially sustains them. But whether the act committed by the employee constitutes employment misconduct is a question of law, which we review de novo.

*Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006) (citations omitted).

The ULJ found that Googe "used the Capstone Sam's Club credit card . . . on various occasions to make purchases of items needed for clients." Googe does not dispute this finding, and the finding is supported by substantial evidence. Both Googe and Zallar testified that Googe made purchases for residents using the credit card.

Googe contends that there is no documentation regarding a policy for the use of the credit card and, therefore, no training could have taken place prohibiting the commingling of the residents' funds with Capstone's funds. The ULJ found that "Googe had received training [on the] policies" relating to the credit card. This finding is supported by substantial evidence. Zallar testified that Googe was trained and retrained on credit card policies due to her previous infractions. Googe did not dispute that she had been trained on the correct use of the credit card. Googe testified that she "[p]robably" attended the trainings documented in the record. She acknowledged that the trainings involved finances, but could not specifically recall if they addressed the use of the Sam's

Club credit card. Moreover, Googe later explained, "My point is that [Zallar] had full knowledge of when I made expenditures at Sam's," indicating that her contention did not involve whether she was trained, but whether her supervisor knew what she was doing.

Googe contends that her supervisors knew about and authorized her use of the credit card to make purchases on behalf of individual residents. The ULJ acknowledged that there is a dispute as to whether Zallar was aware of or condoned Googe's use of the Sam's Club credit card. Thus, credibility is central to the finding on this disputed issue. "When the credibility of a witness testifying in a hearing has a significant effect on the outcome of a decision, the [ULJ] must set out the reason for crediting or discrediting that testimony." 2014 Minn. Laws ch. 251, art. 2, § 15, at 21 (to be codified at Minn. Stat. § 268.105, subd. 1(d) (2014)).[1]

Here, the ULJ credited Zallar's testimony, explaining,

> The more plausible scenario suggests that much of the behavior that Googe engaged in, in violation of policy and procedure, was done for convenience reasons. . . . It is concluded that the employer's testimony supporting a finding that Googe engaged in this behavior, violating the cash handling and accounting procedures, on her own and with an understanding that her actions were not in line with required procedures . . . [and] policy is more persuasive than testimony given by Googe that any violation of policy was with the knowledge and condonation of management.

But this credibility finding fails to set forth a reason to believe the employer's testimony over Googe's as required by the statute. Merely stating that testimony is more plausible

---

[1] This law went into effect June 8, 2014. 2014 Minn. Laws ch. 251, art. 2, §§ 15 (amending section 268.015, subdivision 1), 26 (providing effective date). Because the amendment "merely clarifies preexisting law, the amended statute applies to all future or pending litigation." *Braylock v. Jesson*, 819 N.W.2d 585, 588 (Minn. 2012).

or more persuasive is simply a different way to say that a witness is credible. The ULJ must discuss factors bearing on credibility. *See Ywswf v. Teleplan Wireless Serv., Inc.*, 726 N.W.2d 525, 532–33 (Minn. App. 2007) (listing relevant factors).

Without appropriate credibility findings, we cannot determine whether the ULJ erred by finding the employer's witnesses more credible, which is the reason that the ULJ rejected Googe's claim that she was authorized to use the credit card and supported the ULJ's determination that Googe engaged in employment misconduct. Typically, we would remand for the ULJ to make such findings. *See Wichmann v. Travalia & U.S. Directives, Inc.*, 729 N.W.2d 23, 29 (Minn. App. 2007) (remanding "for additional findings that satisfy the statute"). But we need not do so here because we conclude that Googe engaged in employment misconduct based on the ULJ's unchallenged findings.

Employment misconduct is "any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." Minn. Stat. § 268.095, subd. 6(a) (2012). Googe does not challenge the ULJ's finding that she failed to document the financial transactions of individual residents; attached incorrect receipts to residents' monthly fund sheets; caused a resident to be missing nearly $300; knowingly signed residents' checks without authorization; and commingled residents' funds for smaller purchases. Any challenge to these findings is waived. *See Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn. 1982) (stating that issues not briefed on appeal are waived).

In *McDonald v. PDQ*, we upheld the denial of unemployment benefits based on the relator's termination from employment "for violating a company policy requiring cashiers to ring up purchases immediately." 341 N.W.2d 892, 893 (Minn. App. 1984). We explained that "[t]he policy involved here was important to ensure that money was not misplaced or stolen" and that "[t]he employer has the right to expect scrupulous adherence to procedure by employees handling the employer's money." *Id.* The principle applies here. Capstone's residents are mentally disabled adults and, because of their inability to independently handle their finances, Capstone employs people like Googe to manage their accounts. Googe's actions are serious violations of Capstone's standards of behavior and demonstrate a substantial lack of concern for the employment.

Googe contends that her employment was terminated because of retaliation. When the reason for discharge is disputed, "the hearing process must allow evidence on the competing reasons and provide factual findings on the cause of discharge." *Scheunemann v. Radisson S. Hotel*, 562 N.W.2d 32, 34 (Minn. App. 1997). "The factfinder is then obligated to weigh the evidence, determine credibility, and make a determination on the reasons for the discharge." *Id.*

Googe contends that the ULJ refused to hear testimony on retaliation. Her argument is without merit. The ULJ allowed Googe to testify on her retaliation theory at least twice and without interruption. The hearing process afforded Googe an opportunity to present evidence on her argument. Moreover, there was no reason to determine credibility on the issue of retaliation because it is undisputed that Googe was discharged following the incident related to a resident's missing clothes. By determining that Googe

was discharged for mishandling finances, the ULJ implicitly rejected Googe's claim that she was retaliated against for contacting Zallar's supervisor.

In sum, the ULJ did not err by determining that Googe was discharged for employment misconduct. We have reviewed Googe's other arguments and determine that they are without merit.

**Affirmed.**