*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0283**

Kenny R. Johnson,
Relator,

vs.

TFG LLC,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed December 15, 2014
Affirmed
Reilly, Judge**

Department of Employment and Economic Development
File No. 31657108-3

Kenny R. Johnson, Minneapolis, Minnesota (pro se relator)

TFG LLC, Minneapolis, Minnesota (respondent)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent Department of Employment and Economic Development)

Considered and decided by Stauber, Presiding Judge; Chutich, Judge; and Reilly, Judge.

UNPUBLISHED OPINION

**REILLY**, Judge

Relator Kenny Johnson challenges an unemployment-law judge's (ULJ) determination that he is ineligible for unemployment benefits because he was discharged for employment misconduct after he yelled at and threatened coworkers. We affirm.

## FACTS

Respondent TFG LLC d/b/a Industrial Staffing (TFG) terminated Johnson's employment on August 8, 2013, after a supervisor reported that Johnson threatened and directed profanity at a coworker. Johnson established an account with respondent Minnesota Department of Employment and Economic Development (DEED) seeking unemployment benefits. DEED determined that Johnson was eligible for unemployment benefits because the evidence did not support the conclusion that Johnson "engaged in a threat, fight, or physical altercation."

TFG appealed the determination, and a ULJ conducted a de novo telephonic hearing. Cindy Brooks, a human resource director, and Diane Jacobson, an office and account manager, participated in the hearing on behalf of TFG. Brooks testified that two separate incidents led to Johnson's discharge, both involving the same coworker. Jacobson testified that the first incident happened after Johnson told his coworker she was incorrectly performing a task. After showing the coworker how to perform the task, Johnson "became aggressive with [his coworker]. He started yelling at her using profanity and threatened to knock her out." Johnson also yelled at his supervisor.

The second incident happened the next day when Johnson became aggressive with the same coworker and told her to do her "f--king job." His supervisor wrote up both incidents in an incident report, and Jacobson subsequently spoke with the three team members who were working with Johnson at the time. All three coworkers corroborated the two incidents. Lastly, Jacobson explained that TFG has a policy that an employee may be terminated for any form of misconduct, which includes "insulting, arguing, using profanity or any kind of obnoxious behavior displayed in the workplace."

Johnson testified that he never swore at nor threatened his coworker at any time. Johnson said that the only exchange that he had with his coworker was telling her to add soap to the garbage can. Johnson denied yelling at his supervisor.

The ULJ found Jacobson's testimony to be more credible because "it was reasonable and detailed, internally consistent and persuasive." The ULJ determined that TFG has a right to reasonably expect that its employees will not threaten coworkers, direct profanity at coworkers, and yell at supervisors. Because Johnson did so, the ULJ determined that his actions constituted employment misconduct, thus disqualifying him from unemployment benefits. Johnson requested reconsideration, and the ULJ affirmed his initial determination. Johnson appeals.

**D E C I S I O N**

Johnson challenges the ULJ's decision that he was terminated for employment misconduct. This court reviews a ULJ's decision to determine whether substantial rights were prejudiced because the findings, inferences, conclusions, or decision are unsupported by substantial evidence in view of the record as a whole or affected by an

3

error of law. 2014 Minn. Laws ch. 271, art. 1, § 1, at 1028-29 (to be codified at Minn. Stat. § 268.105, subd. 7(d) (2014)). An employee who is discharged for employment misconduct is ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2012).

"Whether an employee committed employment misconduct is a mixed question of fact and law." *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). Whether the employee committed a particular act is a question of fact, and whether the act is employment misconduct is a question of law. *Id.* We view a ULJ's findings of fact in the light most favorable to the ULJ's decision and will not disturb the factual findings if the evidence substantially supports them. *Id.* But we review de novo a ULJ's legal conclusion that particular conduct is employment misconduct. *Id.*

*ULJ's Factual Findings*

Johnson argues that the incident report was "falsified" and that the TFG employees lied. These assertions implicate credibility determinations. "Credibility determinations are the exclusive province of the ULJ and will not be disturbed on appeal." *Id.* at 345. "When the credibility of a witness testifying in a hearing has a significant effect on the outcome of a decision, the unemployment law judge must set out the reason for crediting or discrediting that testimony." 2014 Minn. Laws ch. 251, art. 2, §§ 15, 24(b), at 862, 870 (to be codified at Minn. Stat. § 268.105, subd. 1a(a) (2014)). If the ULJ fails to make the required credibility determinations, we will "remand for additional findings that satisfy the statute." *Wichmann v. Travalia & U.S. Directives, Inc.*, 729 N.W.2d 23, 29 (Minn. App. 2007).

4

Here, the ULJ made the required findings regarding his credibility determinations:

> To the extent that the parties disagreed, the testimony of Jacobson was more credible because it was reasonable and detailed, internally consistent and persuasive. She received a contemporaneous incident report from Moore, questioned all the witnesses, and also made contemporaneous notes of her findings. The report and notes are in the record. . . .

The ULJ also reasoned that Johnson "offered much less by way of detail compared to the employer." These findings satisfy the statutory requirements.

The pertinent factual findings that support the ULJ's legal conclusion that Johnson's conduct constituted employment misconduct were: (1) Johnson directed profanity at and threatened a coworker; and (2) Johnson yelled at his supervisor. The incident report and TFG's witness testimony substantially support the ULJ's factual findings. Because the ULJ's factual findings are supported by substantial evidence, and because the ULJ provided reasons for his credibility determinations, we defer to his findings that Johnson threatened and directed profanity at a coworker and his supervisor.

*Employment Misconduct*

"Employment misconduct" is "any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." Minn. Stat. § 268.095, subd. 6(a) (2012).

An employee commits employment misconduct when the employee engages in conduct that demonstrates the employee's intent to ignore or not pay attention to the

standards of behavior the employer has a right to expect. *Vargas v. Nw. Area Found.*, 673 N.W.2d 200, 206 (Minn. App. 2004). A knowing violation of an employer's directives, policies, or procedures is employment misconduct because it demonstrates a willful disregard of the employer's interests. *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 806 (Minn. 2002). "[A]n employee's insubordination may constitute misconduct." *Deike v. Gopher Smelting*, 413 N.W.2d 590, 592 (Minn. App. 1987); *see also Snodgrass v. Oxford Props., Inc.*, 354 N.W.2d 79, 80 (Minn. App. 1984) (holding that an employee's insubordinate behavior can constitute employment misconduct).

Here, Jacobson testified that TFG has a policy that prohibits the use of profanity and other "insulting" behavior in the workplace. Johnson's behavior on August 3 and 4 violated this policy. Moreover, even absent a policy, Johnson's behavior violated the standards of behavior that TFG has a right to reasonably expect of their employees.

Johnson also argues that this was a single incident on an otherwise clean employment record. Although whether an employee is discharged for conduct involving only a single incident is not dispositive, it is "an important fact that must be considered in deciding whether the conduct rises to the level of employment misconduct under [the law]." Minn. Stat. § 268.095, subd. 6(d) (2014). But this was not a single incident. The employment-terminating events took place over two days and encompassed three separate inappropriate acts. Because an employer has a right to expect an employee to refrain from inappropriate and offensive conduct, Johnson's profane treatment of a coworker and insubordination constitute employment misconduct. Accordingly, the ULJ did not err in determining that Johnson is ineligible for unemployment benefits.

*Witnesses*

Lastly, Johnson claims that the ULJ should have ordered an additional hearing because the ULJ did not subpoena his witnesses. We defer to a ULJ's decision whether to grant a hearing and will reverse that decision only if the ULJ abused its discretion. *Vasseei v. Schmitty & Sons Sch. Buses Inc.*, 793 N.W.2d 747, 750 (Minn. App. 2010).

When deciding a request for reconsideration, the ULJ "must not consider any evidence that was not submitted at the hearing, except for purposes of determining whether to order an additional hearing." 2014 Minn. Laws ch. 251, art. 2, § 16, at 863-64 (to be codified at Minn. Stat. § 268.105, subd. 2 (2014)). The judge "must order an additional hearing if a party shows that evidence which was not submitted at the hearing . . . would likely change the outcome of the decision and there was good cause for not having previously submitted that evidence." *Id.*

At the start of the hearing, the ULJ instructed both parties that "the applicant has the right to request that the hearing be rescheduled so that documents or witnesses can be subpoenaed." Johnson did not request that the ULJ reschedule the hearing to obtain additional documents or witnesses. On reconsideration, Johnson requested a new evidentiary hearing so that the ULJ could subpoena three witnesses. The ULJ found that Johnson did "not provide any specific information or evidence (other than his assertion) to show that the witnesses would have supported his version of the events . . . a new hearing (and subpoenas) are not warranted and his request is denied."

At the evidentiary hearing, Jacobson testified that the three team members, whom Johnson later requested the ULJ subpoena, all observed Johnson yelling and swearing at

7

his coworker. The ULJ may receive hearsay "if it is the type of evidence on which reasonable, prudent persons are accustomed to rely in the conduct of their serious affairs." 39 Minn. Reg. 147, 151, 154 (Aug. 11, 2014) (to be codified at Minn. R. 3310.2922 (Supp. 2014). This evidence meets that requirement. Accordingly, subpoenaing the witnesses to testify would not change the outcome of the ULJ's decision as the ULJ found Jacobson's testimony credible. Therefore, the ULJ did not abuse his discretion in denying Johnson an additional hearing.

**Affirmed.**