*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1303**

Janvier LeViege,
Relator,

vs.

U.S. Postal Service (FIC 732/Dest 1),
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed May 11, 2015
Affirmed
Peterson, Judge**

Department of Employment and Economic Development
File No. 32274739-3

Janvier D. LeViege, Cottage Grove, Minnesota (pro se relator)

U.S. Postal Service, St. Louis, Missouri (respondent employer)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Worke, Presiding Judge; Peterson, Judge; and Connolly, Judge.

UNPUBLISHED OPINION

**PETERSON**, Judge

Relator challenges an unemployment-law judge's decision that relator is ineligible for unemployment benefits because she was terminated from employment for misconduct after twice failing to comply with the employer's policy for reporting unscheduled absences. Relator argues that (1) she did not commit misconduct because the absences were covered under the Family Medical Leave Act (FMLA), and she complied with the FMLA's reporting requirements; and (2) an additional hearing should have been allowed because she did not receive one of the employer's exhibits until the hearing date. We affirm.

## FACTS

Relator Janvier LeViege worked for respondent U.S. Postal Service as a mail handler and equipment operator. The record contains evidence about disciplinary actions taken against relator during her employment. The postal service uses a four-step disciplinary process. The first step is a letter of warning, the second and third steps are suspensions, and the fourth step is termination.

On August 15, 2013, relator twice failed to report to her assigned work areas. She also initially ignored a supervisor's instruction to turn in a radio that she did not need to use that day and then angrily slammed the radio into the supervisor's hand and, using profanity, insulted him and called him a derogatory name. Because relator had previously received a letter of warning, she received a seven-day suspension for this incident.

On November 27, 2013, relator was repeatedly away from her work area when she was supposed to be working. When questioned by a supervisor, relator said that the forklift that better accommodated her back issues was missing. Relator ignored the supervisor's repeated instructions to get the forklift from a coworker who was using it and instead demanded that the coworker bring the forklift to her. During the exchange, relator became increasingly loud and belligerent. Relator received a 14-day suspension for this incident.

On December 11, 2013, relator was two hours late to work and did not report her tardiness until after she arrived at work. On December 14, 2013, relator did not report to work. Five hours after her shift started, she called and requested eight hours of leave for the day. The postal service's policy requires employees to report unscheduled absences in advance unless prevented from doing so by an actual emergency. On December 18, 2013, the postal service provided relator with union representation and asked her to explain her actions on December 11 and 14. Relator responded, "No thanks." She refused to sign the leave request forms on which she could state her reasons for missing work and would not even look at them.

On December 22, 2013, the postal service gave relator a notice of removal with a discharge date of January 21, 2014. The notice stated that relator's failure to provide a satisfactory explanation for her behavior on December 11 and 14 was unacceptable

behavior. The notice also stated that relator's past disciplinary record was considered in deciding to discharge her. Relator's last day of work was January 24, 2014.[1]

Respondent Minnesota Department of Employment and Economic Development denied relator's request for unemployment benefits. Relator appealed, and following an evidentiary hearing, an unemployment-law judge (ULJ) determined that relator was discharged for misconduct and therefore was ineligible for benefits. Relator requested reconsideration. The ULJ affirmed the misconduct determination but modified the findings of fact to clarify that relator committed the actions for which she was disciplined in August and November 2013 and that relator was absent without leave on December 11 and 14, 2014. This certiorari appeal followed.

## D E C I S I O N

We review a ULJ's decision to determine whether a party's substantial rights may have been prejudiced because the ULJ's findings, inferences, conclusions, or decision are unsupported by substantial record evidence or affected by an error of law or procedure. Minn. Stat. § 268.105, subd. 7(d)(3)-(5) (2014).

An employee who was discharged from employment because of employment misconduct is ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2014). "Employment misconduct" is defined as "any intentional, negligent, or indifferent conduct . . . that displays clearly: (1) a serious violation of the standards of

---

[1] Relator grieved her discharge. Relator and the postal service reached a settlement under which the discharge was converted to a 43-day suspension. Because the suspension was longer than 30 calendar days, it is a discharge for purposes of unemployment benefits. Minn. Stat. § 268.085, subd. 13(b) (2014).

4

behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." *Id.*, subd. 6(a) (2014).

> Whether an employee committed employment misconduct is a mixed question of fact and law. Whether the employee committed a particular act is a question of fact. We view the ULJ's factual findings in the light most favorable to the decision, giving deference to the credibility determinations made by the ULJ. In doing so, we will not disturb the ULJ's factual findings when the evidence substantially sustains them. Minn. Stat. § 268.105, subd. 7(d). But whether the act committed by the employee constitutes employment misconduct is a question of law, which we review de novo.

*Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006) (other citations omitted).

Relator argues that the postal service wrongfully denied her FMLA leave for the December 11 and 14 absences. On the FMLA certification form, relator's healthcare provider described the condition for which relator was eligible for FMLA leave as back pain that made relator unable to perform her job duties. The healthcare provider's February 7, 2014 note states that relator "has been on medication that has the potential of making her drowsy."

In the reconsideration order, the ULJ found:

> [Relator] does not assert anything new about her FMLA. . . . [Relator] and the healthcare provider did not amend [relator's] FMLA leave to allow her to be late because of medication making her incapable of waking up. The call in requirement to report absences still applied, unless it was not medically possible to do so.
>
> [Relator] states December 11, 2013 and December 14, 2013 are covered by FMLA and she has confirmation numbers. The evidence shows that [relator] requested FMLA

5

coverage after the absences and her failure to timely notify the employer had occurred, and that [a supervisor] denied the requests on December 19, 2013, after an investigatory interview. The evidence is insufficient to support that the incidents on December 11, 2013 and December 14, 2013 were the result of medical incapacity. The evidence shows oversleeping was not covered by the FMLA and that it could have been prevented by reasonable planning and precautions.

Relator argues that the ULJ improperly described her conduct as oversleeping when in fact it was "cognitive impairment" due to pain medication. No evidence in the record supports this argument. Back pain was the condition for which relator was eligible for FMLA leave, and no evidence indicates that the medication relator was taking had the potential to result in an impairment that made it medically impossible for her to comply with the postal service's call-in requirement.

Relator argues that she was not prepared for the hearing before the ULJ because she did not receive the employer's exhibit five, which contains documents relating to relator's grievance and disciplinary history, until the hearing date and that her lack of preparation may have been a reason why the ULJ found the employer's testimony more credible than relator's.[2] But relator knew her own grievance and disciplinary history, and she does not indicate how the claimed lack of preparation affected her testimony. Also, the ULJ found relator's testimony less credible because relator failed to present evidence showing that she "was incapacitated or unable to wake up by taking reasonable precautions and planning," and relator failed to present any additional evidence on that

---

[2] Exhibit five was not labeled as an exhibit until the hearing date. But at the hearing, the ULJ noted that the postal service had recently submitted the 67-page exhibit, and relator stated that she had received a copy from the postal service by mail.

6

point when she requested reconsideration. This court defers to the ULJ's credibility determinations. *Bangtson v. Allina Med. Grp.*, 766 N.W.2d 328, 332 (Minn. App. 2009).

Relator twice failed to comply with the postal service's policy that requires an employee to report an unscheduled absence before the employee's shift starts. "An employer has the right to establish and enforce reasonable rules governing absences from work." *Wichmann v. Travalia & U.S. Directives, Inc.*, 729 N.W.2d 23, 28 (Minn. App. 2007). An employee who violates an employer's reasonable policy or who refuses to carry out an employer's reasonable directive commits employment misconduct. *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 806-07 (Minn. 2002). Relator's past disciplinary history, including the two incidents of insubordinate behavior in August and November 2013, was also a factor in the postal service's decision to discharge her. Substantial evidence supports the ULJ's findings on the acts committed by relator, and those findings support the conclusion that relator was discharged because she committed employment misconduct within the meaning of Minn. Stat. § 268.095, subd. 6(a).

**Affirmed.**