**Adar O. YWSWF, Relator,**

v.

**TELEPLAN WIRELESS SERVICES, INC., Respondent,**

**Department of Employment and Economic Development, Respondent.**

No. A06–324.

Court of Appeals of Minnesota.

Jan. 30, 2007.

Lisa Hollingsworth, Southern Minnesota Regional Legal Services, Inc., Shakopee, MN; and Charles H. Thomas, Mankato, MN, for relator.

Frank Vogl, Edward P. Sheu, Best & Flanagan LLP, Minneapolis, MN, for respondent Teleplan.

Linda A. Holmes, Lee B. Nelson, Minnesota Department of Employment and Economic Development, St. Paul, MN, for respondent Department.

Considered and decided by MINGE, Presiding Judge; SHUMAKER, Judge; and HUDSON, Judge.

## OPINION

HUDSON, Judge.

Relator brings a certiorari appeal from the decision of the unemployment law judge (ULJ) that she quit employment and was disqualified from receiving unemployment benefits. She seeks remand, arguing that she did not receive a fair hearing, that the ULJ failed to make the credibility findings required by Minn.Stat. § 268.105, subd. 1(c) (Supp.2005), and that the ULJ erred by failing to order an additional evidentiary hearing pursuant to Minn.Stat. § 268.105, subd. 2(c) (Supp.2005). Because (a) a review of the record demonstrates that relator received a fair hearing; (b) the ULJ's findings provide reasons for the credibility determination made by the ULJ that are supported by substantial evidence; and (c) relator did not make a showing that an additional evidentiary hearing was required, we affirm.

## FACTS

Respondent Teleplan Wireless Services employed relator Adar Ywswf on the second shift as a permanent full-time employee, where her job was testing Nokia cell phones. She worked from February 21, 2005, until October 11, 2005. She asserted that she was laid off, while Teleplan claimed that she quit.

Relator established an unemployment benefits account, and the Department of Employment and Economic Development (DEED) made an initial determination of disqualification, finding that she could have continued working for Teleplan on the first shift, but instead chose to quit. Relator appealed, and a telephone hearing was

conducted by the unemployment law judge (ULJ). Relator appeared pro se, as did the employer, who was represented by its director of human resources, Shirley Curran.

Curran testified that the amount of work available on the Nokia phones on the second-shift had been decreasing, which affected ten people, including relator. At the same time, the employer received new work from Motorola, which would require an additional 16 to 20 employees on the first shift. The company preferred to hire experienced workers. Curran testified that she and an assistant met with the ten Nokia workers on the second shift individually, including relator, and offered them jobs on the first shift beginning Monday, October 17, 2005. She noted that although many people who work on the second shift have particular reasons for doing so, because the employer was seeking experienced workers, it nonetheless wanted to offer these employees an opportunity to move to first shift. Seven of the ten turned down the offer to work on the first shift, including relator.

Curran testified that relator said that she was going to school in the morning and could not accept the first-shift job. Curran, who was surprised to hear this, congratulated relator, explained that there was no other work on the second shift so that her employment would end that night, and discussed her benefits upon leaving the job. When asked by the ULJ whether relator understood that the employer was offering her first-shift work, Curran testified: "When [relator] told me that she was going to school in the morning and couldn't go to first shift it was pretty clear to me that she understood that I was offering her first shift because she was telling me the reason why she couldn't go to first shift."

After Curran testified, the ULJ asked relator whether she had any questions for Curran. Relator said "Yes, I strongly disagree." The ULJ said "Okay, but do you have a question, or do you just want to state your position?" Relator responded "I strongly disagree with what she said." The ULJ then asked relator to explain what she disagreed with.

Relator testified that she was laid off after the Nokia work ended. She denied that Curran had spoken to her about the first-shift work before she was laid off and also denied that she told Curran that she was in school and therefore could not work first shift. The ULJ asked her how Curran would have learned that she was attending school if relator had not told her. Relator explained that she had worked for the company previously on a temporary basis while she was attending school. She offered her school transcript and she testified that she had last attended school in December 2004.

Relator initially denied meeting with Curran before her job ended. She then explained that the Nokia workers were taken to Curran's office one by one. She was the last to be taken there and she was told that there was no job. She again testified that she had not been told about the first-shift job. After some additional testimony from both witnesses, the hearing ended.

The ULJ found that Curran offered relator a first-shift job working on Motorola phones and that relator informed Curran that the first-shift hours conflicted with her school schedule and that she could not accept the offer. The ULJ specifically found that relator's assertions to the contrary were not credible. Because continued employment was available but relator decided not to accept it, the ULJ ruled that relator voluntarily quit and was dis-

qualified from receiving unemployment benefits.

Relator requested reconsideration and submitted additional documents. The ULJ amended one of the findings and affirmed the earlier decision. This certiorari appeal followed.

## ISSUES

I. Did relator receive a fair hearing?

II. Did the ULJ make the credibility findings required by Minn.Stat. § 268.105, subd. 1(c) (Supp.2005)?

III. Did the ULJ err by not ordering an additional evidentiary hearing based on evidence not submitted at the initial hearing under Minn.Stat. § 268.105, subd. 2(c) (Supp.2005)?

## ANALYSIS

 Under the current statutory standard of review, this court will review a decision by the ULJ as follows:

> The Minnesota Court of Appeals may affirm the decision of the unemployment law judge or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioner may have been prejudiced because the findings, inferences, conclusion, or decision are:
>
> (1) in violation of constitutional provisions;
>
> (2) in excess of the statutory authority or jurisdiction of the department;
>
> (3) made upon unlawful procedure;
>
> (4) affected by other error of law;
>
> (5) unsupported by substantial evidence in view of the entire record as submitted; or
>
> (6) arbitrary or capricious.

Minn.Stat. § 268.105, subd. 7(d) (Supp. 2005). Questions of law are reviewed de novo, while findings that are supported by

substantial evidence will not be disturbed. *Id.; Skarhus v. Davanni's, Inc.,* 721 N.W.2d 340, 344 (Minn.App.2006). An appellate court will "defer to an agency's conclusions regarding conflicts in testimony, the weight given to expert testimony and the inferences to be drawn from testimony." *In re Excess Surplus Status of Blue Cross & Blue Shield of Minn.,* 624 N.W.2d 264, 278 (Minn.2001).

## I

 We first address relator's argument that she did not receive a fair hearing. The unemployment law judge (ULJ) is to conduct the evidentiary hearing as an "evidence gathering inquiry" rather than "an adversarial proceeding" and "shall ensure that all relevant facts are clearly and fully developed." Minn.Stat. § 268.105, subd. 1(b) (Supp.2005). The ULJ "shall exercise control over the hearing procedure in a manner that protects the parties' rights to a fair hearing." Minn. R. 3310.2921 (2005); *Miller v. Int'l Express Corp.,* 495 N.W.2d 616, 618 (Minn.App. 1993) (stating official conducting hearing has obligation to recognize and interpret the parties' claims, particularly when the parties are pro se). Each party may examine witnesses, cross-examine the other party's witnesses, and offer and object to exhibits. Minn. R. 3310.2921.

Relator contends that she did not receive a fair hearing because the ULJ did not assist her and was unfair in a number of ways. She argues that the ULJ did not explain cross-examination or assist her in cross-examining Curran; that the ULJ failed to ask Curran probing questions or ask her for corroborating evidence; that the ULJ asked Curran leading questions; and that the ULJ cut off relator's questions. We have read the transcript thoroughly. The ULJ did not use the term "cross-examine," but instead asked relator

if she had questions for Curran and asked her to explain why she disagreed with Curran. The ULJ questioned Curran about the factual dispute, asked whether relator understood that she was being offered a first-shift job, and allowed relator to fully explain her position. Relator's arguments have no merit; to the contrary, the ULJ conducted an even-handed, fair hearing.

■ Next, relator contends that when she referred to her college transcript at the hearing, the ULJ erred because she did not inquire further about it or receive it into evidence. The ULJ "should assist unrepresented parties in the presentation of evidence." Minn. R. 3310.2921. "All competent, relevant, and material evidence, including records and documents in the possession of the parties which are offered into evidence, shall be part of the hearing record." Minn. R. 3310.2922 (2005). The ULJ may receive any evidence that possesses probative value but "may exclude any evidence which is irrelevant, immaterial, unreliable, or unduly repetitious." *Id.*

Although the ULJ did not receive the transcript into evidence, the ULJ nonetheless made findings that took into account relator's claim that she had not been in school at the time she left employment, which is the fact that the transcript was offered to show. The ULJ stated that even if relator had not been currently attending school, as she maintained, the ULJ would nonetheless credit Curran's testimony that relator told her she could not accept the first shift because she was attending school. Further, on relator's motion for reconsideration in which she did specifically offer the school transcript for the ULJ to consider, the ULJ reiterated that whether relator was actually attending school at the time of the quit was not controlling. Instead, the ULJ found that

relator conveyed to Curran that she could not accept the first-shift work at the time of the offer because it conflicted with her school schedule. Thus, relator cannot show any prejudice from the ULJ's failure to receive the transcript into evidence. *See Plowman v. Copeland, Buhl & Co.*, 261 N.W.2d 581, 585 (Minn.1977) (holding that under circumstances of case, failure to formally admit documents was harmless).

■ Finally, relator argues that the ULJ failed to take into account that she is not a native English speaker, that her accent is somewhat difficult to understand, and that her syntax is sometimes nonstandard. The Department of Employment and Economic Development (DEED) is required to provide an interpreter, when necessary, upon the request of a party. Minn. R. 3310.2911 (2005). There is no indication that relator requested an interpreter, that she did not understand the proceedings, or that the ULJ did not understand her. To the contrary, our review of the transcript shows that she made her claims and assertions very clear.

In conclusion, none of relator's claims has merit. Relator has not shown that her substantial rights were prejudiced because the decision was made on unlawful procedure or affected by error of law. Minn. Stat. § 268.105, subd. 7(d).

## II

Next, relator argues that the ULJ failed to make statutorily required credibility findings in a case that hinged on the credibility of the parties.

The requirement that relator refers to is found in Minn.Stat. § 268.105, subd. 1(c) (Supp.2005), and is part of statutory changes that the legislature made in 2005 to the procedure under which parties obtain review of unemployment-benefits decisions. 2005 Minn. Laws ch. 112, art. 2,

§ 34. Previously, the ULJ conducted an evidentiary hearing and made an initial decision, which was subject to de novo review by the senior unemployment review judge (SURJ).[1] Minn.Stat. § 268.105, subd. 2(c) (2004). The SURJ's decision was final and could then be challenged by a certiorari appeal to this court. *Id.*, subds. 2(c), 7(a) (Supp.2005). Under this scheme, the supreme court held that deference should be given to the decision by the commissioner's representative (subsequently SURJ), not the referee (now ULJ).[2] *Tuff v. Knitcraft Corp.*, 526 N.W.2d 50, 51 (Minn.1995). This was based on statutory language that gave the commissioner's representative the authority to disregard the referee's factual findings and make his or her own findings, based on the evidence, despite the fact that the referee conducted the evidentiary hearing. *Id.*

The 2005 amendments changed this procedure. 2005 Minn. Laws ch. 112, art. 2, § 34. Under the amended system, the ULJ continues to conduct the evidentiary hearing and make the initial determination. Minn.Stat. § 268.105, subd. 1(b) (Supp.2005). But rather than providing that a party may seek de novo review from a higher-level decision-maker, a party now must request reconsideration from the same ULJ who conducted the initial evidentiary hearing. *Id.*, subd. 2(a) (Supp. 2005). The ULJ may modify the findings and decision, set the decision aside for an additional evidentiary hearing, or affirm. *Id.* The ULJ's decision modifying or affirming the earlier decision is now the final decision, and a party may seek certiorari review from that decision. *Id.*, subds. 2(f), 7(a).

■ Relator argues that because the unemployment-benefits appeal process no longer includes the commissioner's representative's or SURJ's review of the ULJ's decision and the ULJ's decision is reviewed pursuant to Minn.Stat. § 268.105, subd. 7(d), the law in *Tuff* regarding deference to the decision by the commissioner's representative no longer applies. The point that the supreme court made in *Tuff* was that the commissioner's representative had statutory authority to conduct a de novo review of the ULJ's decision and that therefore this court should defer to the decision by the commissioner's representative rather than the ULJ. 526 N.W.2d at 51. Under the current statute, it is the ULJ who conducts a de novo review in an evidentiary hearing, which is subject only to reconsideration by the same ULJ, not de novo review by another layer at the agency level. Minn.Stat. § 268.105, subd. 2(a). Consequently, this court now must defer to the decision by the ULJ if required under the relevant standard of review. *See Skarhus*, 721 N.W.2d at 344 (providing that this court defers to credibility decisions by the ULJ).

■ Next, we address relator's argument that the ULJ did not provide reasons for crediting or discrediting the testimony of witnesses as required by statute. In conjunction with the changes in the statute outlined above, the legislature also inserted a provision that, in the initial order, the ULJ must make specific findings regarding credibility as follows: "When the credibility of an involved party or witness testifying in an evidentiary hearing has a significant effect on the outcome of a

---

1. Before 2004, the decision-maker was the commissioner's representative; in 2004, the legislature designated the SURJ as the decision-maker, but otherwise did not make significant changes to the procedure. 2004 Minn. Laws ch. 183, § 71.

2. The unemployment law judge was then referred to as the referee.

decision, the [ULJ] must set out the reason for crediting or discrediting that testimony." Minn.Stat. § 268.105, subd. 1(c).

The ULJ found that relator was offered the opportunity to work on the first shift but that she told Curran, the director of human resources, that she could not accept the offer because of her school schedule. The ULJ addressed the credibility determination as follows:

> We have considered Ywswf's contention that she was not offered the opportunity to continue her employment on the first shift, and [that she did not][3] convey to the director of human resources that she could not accept the opportunity because it conflicted with her school schedule, but do not find her assertions to be credible. The director of human resources credibly testified that all 10 employees, including Ywswf, were offered the opportunity to work on the first shift and that three employees accepted the offer while seven, including Ywswf, declined the opportunity because of personal conflicts. Further, the director credibly testified that she was unaware that Ywswf had been enrolled in school and first learned of her schooling when Ywswf explained that she could not accept the position because it conflicted with her school schedule. And, although Ywswf may not currently be attending school, as she maintained, we, nevertheless, find the director of human resources' testimony that this was the reason offered by Ywswf for her decision to decline continued employment to be credible.

Relator asserts that in the above paragraph, the ULJ failed to specify any reason for discrediting relator's testimony that she was not offered first-shift work and that she did not tell the director she could not accept such an offer because of her school schedule. Relator contends that merely citing the parties' testimony does not constitute a finding as to credibility. *See Dean v. Pelton*, 437 N.W.2d 762, 764 (Minn.App.1989) (stating that merely reciting parties' claims does not constitute making findings of fact).

We first review the factors that might be considered in making credibility determinations by agency decision-makers. For example, a workers' compensation judge did not credit an employee's testimony because it was unreliable due to the employee's mental difficulties, but also because he denied making certain statements in a prior deposition. *Even v. Kraft, Inc.*, 445 N.W.2d 831, 835 (Minn.1989). The judge rejected the employee's wife's testimony because of her "selective recall" of events. *Id.* The supreme court, noting that "[a]ssessment of witnesses' credibility is the unique function of the trier of fact," found nothing remiss in the judge's evaluation of the witnesses' testimony. *Id.* In another agency appeal, this court ruled substantial evidence supported the findings, where the witness's testimony that was credited was corroborated by other testimony and evidence, while another's testimony that was not credible was deemed not believable based on the facts asserted. *Saif Food Market v. Comm'r, Dep't of Health*, 664 N.W.2d 428, 430–31 (Minn.App.2003).

Finally, for a list of other factors that may be relevant in determining the credibility of a witness, we refer to the instructions given to a jury for evaluating the credibility of witnesses in a civil trial. 4 *Minnesota Practice*, CIVJIG 12.15 (2006).

---

**3.** The bracketed language was added by the ULJ when she amended her findings in the order on reconsideration.

1. Will a witness gain or lose if this case is decided a certain way?

2. What is the witness's relationship to the parties?

3. How did a witness learn the facts? How did he or she remember and tell the facts?

4. What was his or her manner?

5. What was his or her age and experience?

6. Did the witness seem honest and sincere?

7. Was the witness frank and direct?

8. Is the testimony reasonable compared with other evidence?

9. Are there any other factors that bear on believability and weight?

In addition, you should rely upon your own experience, good judgment, and common sense.

Here, the way in which the director learned the facts and the manner in which she described them appear most relevant. *See id.* Key to the ULJ's credibility determination was testimony by Curran that she first learned of relator's schooling when relator explained that she could not accept the position because it conflicted with her schooling. The director thus had the information about relator's schooling, which she would not have known unless the events occurred as she testified. Further, her version was very detailed and specific. *Id.* In contrast, relator testified she had worked for the company earlier on a temporary basis and that she had also attended school earlier, but there was no testimony showing that Curran had knowledge of her schooling until she offered relator the first-shift position and relator turned it down. The ULJ's findings are supported by substantial evidence and provide the statutorily required reason for her credibility determination.

## III

Finally, relator contends that the ULJ erred when she failed to consider as persuasive newly discovered evidence in reconsidering the decision and that the matter should be remanded for an additional evidentiary hearing. This court will defer to the ULJ's decision not to hold an additional hearing. *Skarhus*, 721 N.W.2d at 345 (addressing request for an additional evidentiary hearing under subdivision 2(d)).

Under the current version of the statute, a party may request reconsideration from the ULJ who initially heard the appeal. Minn.Stat. § 268.105, subd. 2(a), (e) (Supp. 2005). Upon such a request, the ULJ may modify the findings and decision, set aside the findings and decision and direct that an additional evidentiary hearing be conducted, or affirm the findings and decision. *Id.*, subd. 2(a). The ULJ must order an additional evidentiary hearing upon a showing that evidence that was not submitted at the initial hearing "(1) would likely change the outcome of the decision and there was good cause for not having previously submitted that evidence; or (2) would show that the evidence that was submitted at the evidentiary hearing was likely false and that the likely false evidence had an effect on the outcome of the decision." *Id.*, subd. 2(c).

In her motion for reconsideration, relator provided the ULJ with the copy of her school transcript that she had referred to in the initial hearing, showing that she had last attended school in fall semester 2004. She also provided three notarized statements from coworkers on the second-shift Nokia line, in which they asserted that they had been laid off with no other option, that to their knowledge relator had not quit or refused any opportunity offered to her on her last day of work, and that they all proceeded to claim unemployment ben-

efits. Finally, relator provided two notices regarding earlier layoffs that the employer had sent her to comply with federal law.

■ The provision under Minn.Stat. § 268.105, subd. 2(c)(1), will be addressed first. To obtain an additional evidentiary hearing under this section, a relator must show that there is good cause for not having submitted the evidence previously and that such evidence would likely change the outcome of the decision. *Id.* As to good cause, although relator did not address this in her principal brief, she asserted in her reply brief that she had no reason to know that the employer would not be truthful or that she would have to refute the assertion that she was offered first-shift work until after the hearing. But the record shows that the initial disqualification by DEED was based on the finding that she could have continued working for the employer on the first shift, but instead chose to leave employment. A packet of information that relator received before the initial hearing also contains documents with the employer's assertion that relator was offered a first-shift position but refused because of school. Relator's claim has no merit and she has not shown good cause for failing to submit the evidence previously and she cannot prevail under subdivision 2(c)(1).

■ Next, we address Minn.Stat. § 268.105, subd. 2(c)(2), which provides for an additional evidentiary hearing upon a showing that the evidence submitted at the initial evidentiary hearing was "likely false" and had an effect on the outcome of the hearing. Relator argues that her evidence would directly refute the employer's assertions.

First, as to the transcript, the ULJ considered the fact that it was offered to prove that relator was not attending school at the time she left employment in both the initial order and the order on reconsid-

eration. Second, the statements by the three affiants do not directly address the testimony as to whether relator was offered a first-shift job. Further, we defer to the ULJ where the ULJ already had made a credibility determination based on the testimony of the two witnesses who had participated in the conversation. Finally, the notices as to earlier layoffs are not relevant to the credibility determination. Relator has not shown that she was entitled to an additional evidentiary hearing under Minn.Stat. § 268.105, subd. 2(c)(2).

### DECISION

The ULJ's decision that relator is not qualified to receive unemployment benefits is affirmed, and there are no grounds to remand the matter to the ULJ for an additional evidentiary hearing.

**Affirmed.**