*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0391**

Ali Jama,
Relator,

vs.

Marsden Building Maintenance LLC,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed October 20, 2014
Affirmed
Smith, Judge**

Department of Employment and Economic Development
File No. 31704312-3

Ali Jama, Minneapolis, Minnesota (pro se relator)

Marsden Building Maintenance, LLC, c/o ADP UCM/The Frick Co., St. Louis, Missouri (respondent)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Smith, Presiding Judge; Larkin, Judge; and Bjorkman, Judge.

**UNPUBLISHED OPINION**

**SMITH**, Judge

We affirm the decision of the unemployment-law judge (ULJ) that relator committed employment misconduct by failing to complete an assigned task because the ULJ's findings are substantially supported by the record and because the ULJ conducted a fair hearing.

**FACTS**

Marsden Building Maintenance LLC (Marsden) employed relator Ali Jama as a general cleaner from July 13, 1998, to September 20, 2013. Jama's responsibilities at the time of his discharge included cleaning the restrooms of a client's building.

On September 20, 2013, Marsden terminated Jama's employment for "refusing and failing to promptly comply with orders given by the manager, and . . . unsatisfactory quality of service." The Minnesota Department of Employment and Economic Development (DEED) determined that Jama was ineligible for unemployment benefits, and Jama appealed. An evidentiary hearing was held before a ULJ, at which Jama was provided with an interpreter during each day pursuant to his request.

Jama's manager testified that, prior to his discharge, Jama had received warnings and retraining due to job performance issues on several occasions. After four verbal warnings, the manager issued Jama a written warning in April 2012 for incomplete work. In January 2013, the manager issued Jama a "final written warning" for refusal to complete assigned tasks.

2

The manager testified that, during Jama's shift on September 17, 2013, she instructed him to reclean the restrooms in response to an "ongoing" client complaint that the bathrooms Jama was assigned to were not properly cleaned. The manager also testified that she walked Jama through the areas and pointed out what was to be recleaned, but that the restrooms were in the same state the next day, and she believed he had not recleaned them. Jama, on the other hand, testified that the manager did not instruct him to reclean the restrooms. The manager then issued a written warning to Jama for unsatisfactory work, refusal to comply with instructions, and failure to comply with grooming requirements and placed Jama on unpaid suspension. On September 20, 2013, Marsden discharged Jama.

The ULJ determined that Jama had been discharged for employment misconduct. The ULJ's determination was based on her finding that the manager's testimony was more credible than Jama's "because it was consistent and detailed and provided a more plausible sequence of events." Jama requested reconsideration of the ULJ's decision, which was later affirmed.

## D E C I S I O N

When reviewing a ULJ's decision, we may affirm or remand the case for further proceedings. Minn. Stat. § 268.105, subd. 7(d) (2012). We may also reverse or modify a ULJ's decision when a relator's substantial rights have been prejudiced because the ULJ's findings, inferences, conclusion, or decision are made upon unlawful procedure, affected by an error of law, not based on substantial evidence in the record, or arbitrary or capricious. *Id.*

3

The purpose of unemployment insurance is to assist those "who are unemployed through no fault of their own." Minn. Stat. § 268.03, subd. 1 (2012). The Minnesota Unemployment Insurance Law is "remedial in nature and must be applied in favor of awarding benefits," and any provision precluding receipt of benefits "must be narrowly construed." Minn. Stat. § 268.031, subd. 2 (2012). There is no equitable denial or allowance of benefits. Minn. Stat. § 268.069, subd. 3 (2012).

On appeal, Jama argues that he performed his work satisfactorily and that he was discharged as a result of discrimination against him by his manager. In addition, Jama argues that the ULJ found the manager's testimony more credible because his testimony was taken through the use of "uncertified translator[s]."

## I.

An employee who is discharged for employment misconduct is ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2012). "Employment misconduct" is "any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." *Id.*, subd. 6(a). "Whether an employee committed employment misconduct is a mixed question of fact and law." *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). "Whether the employee committed a particular act is a question of fact," which we review "in the light most favorable to the [ULJ's] decision, giving deference to the [ULJ's] credibility determinations." *Id.* (citations omitted). "[W]e will not disturb the ULJ's factual findings when the evidence substantially sustains

4

them." *Id.* (citing Minn. Stat. § 268.105, subd. 7(d)). "But whether the act committed by the employee constitutes employment misconduct is a question of law, which we review de novo." *Id.*

The ULJ made the following factual findings: (1) that Marsden repeatedly warned Jama about his unsatisfactory performance and provided retraining; (2) that Marsden's customer complained about the state of the restrooms on September 17; (3) that the manager instructed Jama to reclean the bathrooms and complete tasks; (4) that Jama did not reclean the bathrooms or perform other tasks requested; and (5) that Marsden discharged Jama for unsatisfactory work and refusal to comply with instructions.

Each finding is supported by the record. First, Marsden provided documentation of verbal and written warnings that Marsden gave Jama over the course of his employment. Second, the manager testified that she received a complaint about the state of the bathrooms on September 17 and that the complaint reflected an ongoing concern of the client. In addition, Marsden submitted documentation of the complaint. Third, while Jama testified that the manager did not ask him to reclean the restrooms, the manager testified that she instructed Jama on the specific tasks to be performed and pointed out the areas to be recleaned. Fourth, the manager testified that the areas were in the same state when she returned to check that Jama had completed the request.

Jama argues that he was discharged as a result of discrimination by his manager, not for failing to perform requested tasks, but Jama identifies no evidence of discrimination in the record. To the contrary, a Marsden human resources professional testified that she discharged Jama for "refusing and failing to promptly comply with

5

orders given by the manager, and . . . unsatisfactory quality of service." In addition, the manager testified that she treated all the employees she supervised the same. Therefore, the ULJ's factual findings are supported by substantial evidence.

The ULJ reached the legal conclusion that employment misconduct existed because Jama did not perform his duties and did not comply with reasonable requests from Marsden by not cleaning the restrooms as requested. This legal conclusion is supported by the factual findings that Jama was instructed to reclean the restrooms after numerous warnings about job performance and failed to do so. Jama's failure to reclean the restroom upon request was a "serious violation of the standards of behavior the employer has the right to reasonably expect" and showed "a substantial lack of concern for the employment." Minn. Stat. § 268.095, subd. 6(a).

Therefore, the ULJ did not err by concluding that Jama's conduct was within the statutory definition of employment misconduct.

**II.**

Jama also challenges the ULJ's credibility determination because his participation in the hearing was through the use of an "uncertified translator."

DEED is required to provide an interpreter "when necessary, upon the request of a party." Minn. R. 3310.2911 (2013). When a party cannot be understood or understand the hearing, the ULJ must continue the hearing. *Id.* When the record establishes that an interpreter was provided, if requested, and the relator participated in the hearing with no indication of a lack of understanding, no grounds for reversal exist. *See Ywswf v.*

6

*Teleplan Wireless Servs., Inc.*, 726 N.W.2d 525, 530 (Minn. App. 2007) (affirming where no interpreter was requested).

The record reflects that Jama was understood during the proceeding and was able to understand it. On each day of the hearing, an interpreter was sworn in and translated the proceeding for Jama. The ULJ instructed the parties to speak slowly and allow the interpreter time to speak in order to facilitate interpretation. The transcript shows that the ULJ occasionally requested clarification to ensure that she understood Jama's meaning during his testimony. Furthermore, Jama's claims and assertions in his appeal were made clear in his testimony before the ULJ and developed through the ULJ's questioning. Jama never expressed concern that he was not being understood or that he was unable to understand the proceedings, thus the transcript reflects that Jama was able to participate in the hearing.

On reconsideration, the ULJ noted that Jama never indicated an issue with the interpretation during the proceeding and that his request for reconsideration did not identify any specific issues with the interpretation. His appeal similarly does not identify any specific issues with the interpretation.

For the foregoing reasons, we affirm the ULJ's determination that relator was discharged for employment misconduct and is ineligible for unemployment benefits.

**Affirmed.**