*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0096**

Courtney Paulson,
Relator,

vs.

General Nutrition Center, Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent

**Filed August 31, 2015
Affirmed
Chutich, Judge**

Department of Employment and Economic Development
File No. 32574512-3

Courtney Paulson, Minneapolis, Minnesota (pro se relator)

General Nutrition Center, Inc., Pittsburgh, Pennsylvania (respondent)

Lee B. Nelson, Timothy C. Schepers, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

        Considered and decided by Larkin, Presiding Judge; Ross, Judge; and Chutich, Judge.

UNPUBLISHED OPINION

**CHUTICH**, Judge

Relator Courtney Paulson challenges an unemployment-law judge's determination that she is ineligible for unemployment benefits. Because substantial evidence supports the unemployment-law judge's conclusion that Paulson committed employment misconduct, we affirm.

## FACTS

Courtney Paulson began working for General Nutrition Center, Inc. ("GNC") in December 2011, and she was promoted to manager of her own store in April 2013. One of Paulson's key job responsibilities was counting certain products at the beginning and end of each of her shifts; these counts are called "cycle counts." Employees were not allowed to use the previous night's count for the next morning's count. Falsifying a cycle count was grounds for termination.

On April 1, 2014, GNC's regional sales director visited Paulson's store. Paulson had not yet finished the cycle count, so she completed the form with the previous night's numbers. Paulson then showed the sales director the false cycle count because she did not want to get in trouble. The sales director confronted Paulson about the cycle count, and Paulson admitted that it was incorrect.

Between March 2014 and April 2014, Paulson also incorrectly processed 18 of her own purchases. Paulson used an employee free sample coupon to try different flavors of the same item, but the coupon only allowed employees to sample one item. Several times

Paulson also used the "buy three get one free" promotion but gave herself the highest-priced item for free instead of the lowest-priced item, as required by company policy.

An investigation began after corporate reports flagged Paulson's store because of the high number of manual price overrides. The regional sales director contacted the regional loss prevention manager, and they interviewed Paulson about the price overrides. The two reviewed individual transactions with Paulson. They also asked her about the falsified cycle count. During this meeting, Paulson wrote a statement admitting to the improper price overrides and the falsified cycle count. After the interview, Paulson was told that she was suspended. Paulson learned the next week that she had been terminated.

The Minnesota Department of Employment and Economic Development (the department) initially determined that Paulson was eligible for unemployment benefits. GNC appealed this determination, and a hearing was convened. Paulson, the regional sales director, and the regional loss prevention manager all testified at the hearing.

The unemployment-law judge determined that Paulson was ineligible for unemployment benefits. The judge noted that the parties did not dispute that Paulson presented falsified documents to GNC by copying the cycle counts. The judge concluded that GNC had the right to expect Paulson not to falsify those documents, and that intentionally lying and showing the supervisor incorrect information was a serious violation of GNC's reasonable expectations.

The unemployment-law judge further concluded that GNC had the right to reasonably expect that Paulson would not engage in conduct that would result in the

company's financial loss for her personal gain. Paulson intentionally violated this expectation by overriding higher-priced items when ringing her personal "buy three get one free" purchases and by redeeming employee free sample coupons for several flavors of the same item.

Based on these findings, the unemployment-law judge determined that Paulson was discharged for employment misconduct and therefore was ineligible for unemployment benefits. Paulson requested reconsideration, and the unemployment-law judge affirmed her decision. Paulson appealed by writ of certiorari.

## D E C I S I O N

The purpose of the Minnesota Unemployment Insurance Program is to assist those who become unemployed through no fault of their own. Minn. Stat. § 268.03, subd. 1 (2014). This court may affirm the decision of an unemployment-law judge or remand the case for further proceedings; it may also reverse or modify the decision if the substantial rights of the relator have been prejudiced because the findings, inferences, conclusion, or decision is affected by an error of law or unsupported by substantial evidence in view of the record as a whole. Minn. Stat. § 268.105, subd. 7(d) (2014).

An employee discharged for employment misconduct is ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2014). "Employment misconduct" is defined as "any intentional, negligent, or indifferent conduct . . . that displays clearly . . . a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee." *Id.*, subd. 6(a) (2014). Conduct that was the consequence of the employee's inefficiency or inadvertence, however, is not employment

4

misconduct. *Id.*, subd. 6(b) (2014). "As a general rule, refusing to abide by an employer's reasonable policies and requests amounts to disqualifying misconduct." *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002).

Employment misconduct presents a mixed question of fact and law: whether an employee committed a particular act is a question of fact, and whether that act is employment misconduct is a question of law. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). An unemployment-law judge's factual findings are viewed in a light most favorable to the decision, and they will not be disturbed if the evidence substantially sustains them. *Id.* Credibility determinations are the exclusive province of the unemployment-law judge. *Id.* at 345.

## I. Falsification of Company Documents

Paulson first asserts that the unemployment-law judge's finding that she falsified company documents was unsupported by substantial evidence. This argument is without merit.

The unemployment-law judge found that Paulson intentionally falsified company documents and showed the documents to the regional sales director. Substantial evidence supports this finding. Paulson herself admitted at the hearing that she completed a morning cycle count using the previous night's figures. She also included this fact in her written statement following the investigation. Based on these admissions, this finding is supported by substantial evidence.

Paulson further argues that the unemployment-law judge erred by determining that this falsification was misconduct, but under established company policy, Paulson's

5

falsification was grounds for immediate termination from GNC. The testimony demonstrated that cycle counts are a "critical" tool employed by GNC. Paulson's intentional falsification of the cycle count was a serious violation of the standards of behavior that GNC had a right to reasonably expect, especially from a store manager. *See* Minn. Stat. § 268.095, subd. 6(a)(1).

Paulson claims that this act was not misconduct because she merely used poor judgment. If judgment is required, a good-faith error in judgment is not employment misconduct. Minn. Stat. § 268.095, subd. 6(b)(6). But no evidence presented here shows that Paulson needed to make a judgment call; she simply panicked and filled in the cycle count with the previous night's numbers. Furthermore, acts inconsistent with an employee's training or established procedure are not considered errors of judgment. *See Ress v. Abbott Nw. Hosp., Inc.*, 448 N.W.2d 519, 525 (Minn. 1989). The good-faith judgment exception therefore does not apply.

Because we conclude that this falsification was disqualifying employment misconduct, we do not consider whether Paulson's price overrides were also employment misconduct.

## II.     Credibility Determination

Paulson finally claims that the unemployment-law judge erred by determining that the GNC employees were more credible than she. We disagree.

We defer to the unemployment-law judge's credibility determinations when they are supported by substantial evidence and the unemployment-law judge sets forth a valid reason for crediting or discrediting the witness. *See Ywswf v. Teleplan Wireless Servs.,*

*Inc.*, 726 N.W.2d 525, 533 (Minn. App. 2007); *see also* Minn. Stat. § 268.105, subd. 1a(a) (2014) (stating that the unemployment-law judge must set out the reason for crediting or discrediting testimony when the credibility "has a significant effect on the outcome of a decision").

The unemployment-law judge credited the GNC employees' testimonies because they were "detailed, persuasive, reasonable, consistent, and described a more plausible sequence of events." These reasons meet the statutory requirement. *See Ywswf*, 726 N.W.2d at 533 (noting that the level of detail and reasonableness are permissible factors to consider in evaluating credibility). Our review also satisfies us that the record supports these reasons.

**Affirmed.**