*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0429**

Dean M. Haupt,
Relator,

vs.

Menard, Inc.,
Respondent,
Department of Employment and Economic Development,
Respondent.

**Filed December 28, 2015
Affirmed
Reyes, Judge**

Department of Employment and Economic Development
File No. 33072583-3

Dean M. Haupt, Britt, Minnesota (pro se relator)

Menard, Inc., Eau Claire, Wisconsin (respondent employer)

Lee B. Nelson, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Reyes, Presiding Judge; Connolly, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REYES**, Judge

Relator challenges a decision by an unemployment-law judge (ULJ) that he is ineligible for unemployment benefits. We affirm.

# FACTS

Relator Dean Haupt applied for and was denied unemployment benefits on the basis that he quit his employment to pursue self-employment. Relator appealed the determination of ineligibility by the Minnesota Department of Employment and Economic Development (DEED), and a ULJ held an evidentiary hearing on the matter. At the hearing, relator testified on his own behalf, and S.C. testified on behalf of Menard, Inc. (Menard). W.K., who is from Menard's legal department, represented Menard. The following is based on relator and S.C.'s testimony at the hearing.

Relator was employed by Menard from June 2012 until he quit his employment on April 22, 2014. From approximately January or February 2013 to February 2014, relator worked in the contractor-sales department and was supervised by J.P. Relator alleges that J.P. constantly harassed him by calling him "Alto," which had a negative connotation because the employee that relator replaced, D. Alto, was considered a "shady character" and, according to relator, it was tantamount to being called a "thief repeatedly day after day." Relator stated that, in addition to telling J.P. to stop this behavior, he talked to the human-resources manager, but she "laughed it off like it's not a big deal." After this, he did not complain to anyone else, and the name calling "kind of mellowed out. But still came up."

Additionally, relator alleges that J.P. sexually harassed him regarding a manager named S.M. J.P. allegedly made embarrassing comments about relator being in a relationship with S.M. and made sexual comments about S.M. in front of customers and other employees. Relator states that he sent an email to the general manager and the

2

human-resources department regarding J.P.'s harassing behavior, but he never received a response.[1] However, relator never produced the email. S.C. stated that he was not aware of J.P.'s comments to relator about S.M., but S.M. confirmed in a letter that she was aware of the comments. Relator never lodged a complaint regarding J.P.; Menard's management responded that, given Menard's non-harassment policy, it would have acted upon a complaint.

Shortly after returning from vacation in January 2014, relator alleges that Menard reduced his hours from full-time to part-time. On February 4, 2014, relator also applied for leave pursuant to the Family and Medical Leave Act (FMLA). Relator states that, prior to his reduction in hours, he spoke to J.P. regarding switching "hours or days off," but that J.P. had denied his request. Relator believes that he was reduced to part-time either because of his disagreements with J.P. or because he applied for family leave. Relator complained to the assistant manager regarding the reduction in hours. While the parties dispute the facts regarding relator's change in position and move to part-time, the record reflects that relator was moved to the delivery-coordinator position. Relator did not complain to S.C. regarding his move to part-time.

Relator also testified that he quit because he believes Menard owes him money, including $850-$900 in gas reimbursement, reimbursement for damaged tail lights on his

---

[1] Relator states that he did not mention either instance of harassment in his letter of resignation because he did not want to burn bridges, and previously, when he brought up the issue, the company never addressed it; he felt that there was no reason to bring it up upon resigning.

3

personal vehicle, and money improperly withheld from his payroll for a damaged security key fob.[2]

S.C. recalls relator requesting a gas reimbursement, but he does not recall a dispute at the time. There is a dispute over the amount owed, but S.C. does not believe anyone was keeping track of relator's gas reimbursement. S.C. also recalls relator having an issue with his personal vehicle; however, Menard has a general policy that employees cannot "use personal vehicles for business-related" activities. S.C. testified that Menard's insurance company would be responsible for the insurance claim on an employee's property, but he was unaware of relator's alleged insurance claim. This testimony conflicts directly with manager S.M.'s letter stating that she took pictures and submitted an insurance claim on relator's behalf for the damage to his personal vehicle. Last, S.C. was not involved with the money withheld regarding the damaged key fob, but believes that relator spoke with the assistant manager about this issue.

Relator testified that he sent in a letter of resignation on April 9, 2014, in order "to fulfill other business obligations and to continue additional licensing for [his] business." Upon terminating his position at Menard, he refused to sign Menard's "Voluntary Separation Form," stating that Menard still owed him approximately $1,000 in gas reimbursement. Despite resigning from his employment at Menard, relator maintained a working relationship with the company as an independent contractor with their lawn-care service.

---

[2] Relator testified that a security key fob is a small encrypted device used to access the company's network through a tablet.

The ULJ determined that relator's decision to quit was to pursue self-employment, which does not fall under a statutory exception eligible for unemployment benefits. The ULJ referenced both relator's letter of resignation and his responses in the DEED questionnaire submitted as part of his request for unemployment benefits, where relator stated unequivocally that he quit "for self-employment" and "to fulfill other business obligations." Relator requested reconsideration of the ULJ's decision, and the decision was affirmed. Relator appeals.

## D E C I S I O N

This court reviews a ULJ's decision denying unemployment benefits to determine whether the findings, inferences, conclusions, or decision are in violation of constitutional provisions, in excess of statutory authority, made upon unlawful procedure, affected by an error of law, unsupported by substantial evidence, or arbitrary and capricious. Minn. Stat. § 268.105, subd. 7(d) (2014). The purpose of the Minnesota Unemployment Insurance Law is to assist those who are "unemployed through no fault of their own." Minn. Stat. § 268.03, subd. 1 (2014). There is no burden of proof in unemployment-insurance proceedings, Minn. Stat. § 268.069, subd. 2 (2014), nor is there equitable denial or allowance of benefits. Minn. Stat. § 268.069, subd. 3 (2014).

Appellate courts "review the ULJ's factual findings in the light most favorable to the decision." *Stagg v. Vintage Place, Inc.*, 796 N.W.2d 312, 315 (Minn. 2011) (quotation omitted). We "give deference to the ULJ's credibility determinations." *Van de Werken v. Bell & Howell, LLC*, 834 N.W.2d 220, 221 (Minn. App. 2013), *review denied* (Minn. July 15, 2014)). This court will affirm if "[t]he ULJ's findings are

5

supported by substantial evidence and provide the statutorily required reason for [its] credibility determination." *Ywswf v. Teleplan Wireless Servs., Inc.*, 726 N.W.2d 525, 533 (Minn. App. 2007). Whether the ULJ's findings establish that the applicant falls within a statutory exception to eligibility presents a question of law, which we review de novo. *See, e.g.*, *Nichols v. Reliant Eng'g & Mfg., Inc.*, 720 N.W.2d 590, 594-95 (Minn. App. 2006).

**I.     The ULJ's finding that relator quit employment to be self-employed is supported by substantial evidence.**

In general, an employee who quits employment is ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 1 (2014). "A quit from employment occurs when the decision to end the employment was, at the time the employment ended, the employee's." *Id.*, subd. 2(a) (2014). Yet, an employee who quits employment is eligible for benefits if the employee quits because of one of the exceptions listed in Minn. Stat. § 268.095, subd. 1. Here, it is undisputed that relator quit. But relator now alleges that his stated reasons for quitting to "fulfill other business obligations" and "self-employment," were not his actual reasons, and he quit for "multiple reasons." We disagree.

**A.     Qualifying statutory exception**

Relator challenges the ULJ's conclusion that no exception in Minn. Stat. § 268.095, subd. 1, applied to his case. One exception is when:

> The applicant quit the employment because of a good reason caused by the employer… (1) that is directly related to the employment and for which the employer is responsible; (2) that is adverse to the worker; and (3) that would compel an average,

6

> reasonable worker to quit and become unemployed rather than remaining in the employment.

*Id.*, subd. 1, 3(a) (2014).

Here, relator alleges that he quit because he was harassed and sexually harassed by his direct supervisor, his hours were reduced from full-time to part-time, Menard owes him money for gas reimbursement and damaged tail lights on his personal vehicle, and money was withheld from his payroll for a damaged key fob. But, the ULJ found that relator quit to become self-employed, which is not a good reason caused by the employer. In making these findings of fact, the ULJ also made credibility determinations.

### B.  Credibility

The ULJ provided multiple reasons to support its findings that relator quit to become self-employed. The ULJ credited relator's letter of resignation and the DEED questionnaire he filled out to find that he quit to become self-employed. On both forms, relator consistently stated that he quit to "fulfill other business obligations" and "self-employment" and did not mention any other reasons for quitting. Moreover, the ULJ noted that the DEED questionnaire has "an area for applicants to provide 'any additional information about this issue.' [Relator] left this area blank." He did not provide DEED with any additional reasons for quitting until six months after he applied for unemployment benefits and he was determined to be ineligible. Accordingly, the ULJ found that the only credible reason that relator quit was to become self-employed.

The ULJ did not find relator's testimony of the timeline in which he submitted his complaints yet continued to work for Menard for several months to be credible. As such,

7

the ULJ provided multiple detailed reasons for his determination that relator's testimony was not credible. The ULJ's determination is supported by substantial evidence in the record, and its credibility determination is reasoned.

**II.     The ULJ did not err in allowing Menard's attorney W.K. and general manager S.C. to represent Menard at the evidentiary hearing.**

Relator alleges that Menard's attorney W.K. violated Minn. R. Gen. Pract. 5 by representing the company at the evidentiary hearing because W.K. is not a licensed attorney in Minnesota. But Rule 5 applies to Minnesota state trial courts, not to evidentiary hearings before a ULJ. Rather, Minn. R. 3310.2916 (2013) states that "[i]n a hearing before a [ULJ], a party may be self-represented or represented by an attorney or an authorized representative." *See also* Minn. Stat. § 268.105, subd. 6(a) (2014) (stating that "an applicant or employer may be represented by any authorized representative").

Here, W.K. is Menard's legal counsel and, as Menard's representative, he falls under the category of an authorized representative. Also, S.C. is the general manager at Menard in Virginia, Minnesota. As an authorized representative, he was also able to represent Menard in an appeal. As such, W.K. and S.C. legally represented Menard at the evidentiary hearing.

**III.    The ULJ did not err by allowing relator to testify on the record to being reduced from full-time to part-time status.**

Relator states that during the evidentiary hearing, the ULJ did not give him the opportunity to address the issue of his reduction to part-time and that text messages supported his claim that this is a good reason caused by the employer to quit. He provides no further argument or evidence to substantiate this assertion. Moreover, in

8

relator's request for reconsideration, he failed to assert that the ULJ prevented him from discussing this issue. Conversely, in his request for reconsideration, relator conceded that he testified to only speaking with his immediate supervisor and not S.C. about the change in hours. Mere assertions of error not supported by argument or authority cannot be considered on appeal except where prejudice is obvious. *State v. Modern Recycling, Inc.*, 558 N.W.2d 770, 772 (Minn. App. 1997). Additionally, an appellate court does not consider issues not raised to the court below. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). But, relator was given an opportunity to discuss moving from full-time to part-time status at the evidentiary hearing. Therefore, even if we were to consider relator's arguments, they are without merit.

**Affirmed.**