*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0158**

Deborah Hagen,
Relator,

vs.

Family Focused Recovery Services, PLLC,
Respondent,

Department of Employment and
Economic Development,
Respondent.

**Filed September 6, 2016
Affirmed
Johnson, Judge**

Department of Employment and
Economic Development
File No. 34009173-3

Peter B. Knapp, Luke McClure, Certified Student Attorney, Mitchell Hamline Law Clinic, St. Paul, Minnesota (for relator)

Family Focused Recovery Services, PLLC, Robbinsdale, Minnesota (respondent)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Halbrooks, Presiding Judge, Johnson, Judge, and John P. Smith, Judge.*

---

*Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**JOHNSON**, Judge

Deborah Hagen was employed by Family Focused Recovery Services, PLLC, for five months. An unemployment-law judge ruled that she is ineligible for unemployment benefits because she quit her employment. We conclude that the unemployment-law judge provided sufficient reasons for her credibility determinations, that substantial evidence supports the finding that Hagen quit her employment, and that Hagen is not entitled to an additional hearing to present additional evidence. Therefore, we affirm.

## FACTS

Family Focused Recovery Services (FFRS) provides outpatient chemical-dependency treatment. FFRS employed Hagen as a substance-abuse counselor from May 26, 2015, until October 21, 2015. Shortly after leaving the company, Hagen applied for unemployment benefits. The department of employment and economic development made an initial determination that Hagen is ineligible for benefits because she quit her employment.

Hagen filed an administrative appeal of the initial determination. An unemployment-law judge (ULJ) conducted an evidentiary hearing in November 2015. FFRS appeared through two representatives: Kathy Clark, Hagen's former supervisor, and Derryck Moore, the CEO. Hagen appeared and testified on her own behalf and also presented the testimony of a former co-worker. The central issue in the administrative appeal was whether Hagen quit or was discharged. The evidence focused on Hagen's final

2

day of employment, October 21, 2015. The parties presented alternative versions of the events of that day.

On behalf of FFRS, Clark testified that Hagen came into her office at approximately 2:00 or 2:30 p.m. to discuss her work assignments. Clark testified that Hagen appeared to be upset and said, "I can't do this anymore; I'm going to submit my resignation." Clark testified that Moore walked into her office during the conversation. Clark testified that the conversation with Hagen lasted approximately five minutes and that, afterward, Hagen "walked out of [the] office, packed her office and left the facility." Clark testified that Hagen took some of her personal items with her and returned at a later date to collect other items. Moore's testimony was substantially similar to Clark's testimony. FFRS submitted an internal memorandum, dated October 21, 2015, that is consistent with Clark's and Moore's testimony.

Hagen's testimony conflicted with that of Clark and Moore. Hagen testified that, when she went into Clark's office on October 21 at approximately 2:30 p.m., both Clark and Moore were present and were talking. Hagen testified that she, Clark, and Moore had a 30-minute discussion. Hagen testified that she informed Clark and Moore that it was not possible for her to complete her caseload. Hagen testified that Moore told her, "Give me your resignation," and that she responded by saying, "I'm not gonna do that." Hagen testified that she and Moore left Clark's office and that she continued to work for the remainder of the day. Hagen testified that Moore later came to her office at least three times to ask for her resignation, that she refused to give it, and that Moore eventually said, "Okay, go ahead and start packing up your stuff; you're done."

Hagen called Vernna Anderson, a former co-worker, as a witness for the purpose of impeaching Moore's testimony. Hagen informed the ULJ that Anderson would testify that Moore has a "history" of "say[ing] that everyone quits when he [actually] fires them." Hagen and the ULJ questioned Anderson about Moore's actions with respect to another former employee, D.B. Anderson testified that D.B. told him that she was fired and that Moore also had told him that D.B. was fired. In light of this testimony, the ULJ questioned Hagen's claim that Moore has a history of saying that employees had quit even though he had fired them. Hagen responded that the testimony is relevant because Moore had told *her* that D.B. had quit. When Hagen attempted to elicit additional testimony from Anderson about other former employees of FFRS, the ULJ did not allow it.

In December 2015, the ULJ issued a written decision in which she made findings that are consistent with Clark's and Moore's testimony regarding the events of October 21. The ULJ stated that Clark's testimony and Moore's testimony is "more credible than Hagen's testimony because it is more convincing and likely and they corroborate each other." The ULJ concluded that Hagen is ineligible for unemployment benefits because she quit her employment. After Hagen requested reconsideration, the ULJ affirmed her earlier decision. Hagen appeals by way of a writ of certiorari.

## D E C I S I O N

### I. Quit or Discharge

Hagen first argues that the ULJ erred by finding that she quit her employment. Specifically, Hagen argues that the ULJ erred by not providing reasons for crediting Clark's testimony and Moore's testimony over her own testimony, as required by statute,

4

and that without Clark's testimony and Moore's testimony, there is insufficient evidence in the record to support the ULJ's finding that she quit.

This court reviews a ULJ's decision denying benefits to determine whether the findings, inferences, conclusions, or decision are affected by an error of law, are unsupported by substantial evidence in view of the entire record, or are arbitrary or capricious. Minn. Stat. § 268.105, subd. 7(d) (Supp. 2015). An evidentiary hearing before a ULJ is an evidence-gathering inquiry and is conducted without regard to any particular burden of proof. *See* Minn. Stat. § 268.069, subd. 2 (2014); *Vargas v. Northwest Area Found.*, 673 N.W.2d 200, 205 (Minn. App. 2004), *review denied* (Minn. Mar. 30, 2004). The ULJ's factual findings are viewed in the light most favorable to the decision being reviewed, and this court defers to the ULJ's credibility determinations. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006).

## A.    Credibility Determinations

Hagen argues that the ULJ erred by not stating the reasons for her credibility determinations. Her argument is based on the following statute: "When the credibility of a witness testifying in a hearing has a significant effect on the outcome of a decision, the unemployment law judge must set out the reason for crediting or discrediting that testimony." Minn. Stat. § 268.105, subd. 1a(a) (2014). This court has applied the statute in two published opinions. First, in *Ywswf v. Teleplan Wireless Servs., Inc.*, 726 N.W.2d 525 (Minn. App. 2007), the ULJ recited with specificity the conflicting testimony of each witness and stated that the relator was not credible and that the employer's representative was credible. *Id.* at 532. We considered the ULJ's decision in light of the witnesses'

5

testimony and concluded that the ULJ satisfied the requirements of the statute. *Id.* at 533 (applying Minn. Stat. § 268.105, subd. 1(c) (Supp. 2005), predecessor of Minn. Stat. § 268.105, subd. 1a(a) (2014)). Second, in *Wichmann v. Travalia & U.S. Directives, Inc.*, 729 N.W.2d 23 (Minn. App. 2007), the ULJ made findings concerning the underlying facts but did not make any credibility determinations. *Id.* at 29. We concluded that the ULJ did not satisfy the requirements of the statute and, accordingly, remanded to the ULJ for additional findings. *Id.* (applying Minn. Stat. § 268.105, subd. 1(c) (Supp. 2005), predecessor of Minn. Stat. § 268.105, subd. 1a(a) (2014)).

In this case, the ULJ made express credibility determinations and provided reasons for the determinations: "Clark's and Moore's testimony is more credible than Hagen's testimony, because it is more convincing and likely and they corroborate each other." The ULJ also recited with specificity the conflicting testimony of each witness. The ULJ in this case did more than the ULJ in *Ywswf* because the ULJ explained that Clark's testimony and Moore's testimony was "more convincing and likely" and that Clark and Moore "corroborate each other." The ULJ's statement of reasons is supported by *Ywswf*, in which we stated that, in making credibility determinations, a ULJ may consider whether "testimony [is] reasonable compared with other evidence" and whether a witness's testimony is "corroborated by other testimony and evidence." *See id.* at 532-33. This case is unlike *Wichmann*, in which the ULJ failed to make any credibility determinations. *See Wichmann*, 729 N.W.2d at 29. Although the ULJ's reasons in this case are not as extensive or detailed as Hagen might prefer, they are sufficient under our caselaw to satisfy the requirement of section 268.105, subdivision 1a(a).

**B.      Substantial Evidence**

Hagen next argues that there is insufficient evidence in the agency record to support the ULJ's finding that she quit.  Her argument assumes that we will disregard Clark's testimony and Moore's testimony on the ground that the ULJ failed to state reasons for her credibility determinations.  But in light of our conclusion that the ULJ provided adequate reasons for her credibility determinations, we will consider Clark's testimony and Moore's testimony.

An employee who quits employment generally is ineligible for unemployment benefits.  Minn. Stat. § 268.095, subd. 1 (2014).  "A quit from employment occurs when the decision to end the employment was, at the time employment ended, the employee's."  Minn. Stat. § 268.095, subd. 2(a) (2014).  Whether an employee quit or was discharged is a question of fact.  *Stassen v. Lone Mountain Truck Leasing, LLC*, 814 N.W.2d 25, 31 (Minn. App. 2012).  We review such a finding to determine whether there is substantial evidence in the record to support it.  Minn. Stat. § 268.105, subd. 7(d)(5).  "Substantial evidence is '(1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; or (5) the evidence considered in its entirety.'"  *Dourney v. CMAK Corp.*, 796 N.W.2d 537, 539 (Minn. App. 2011) (quoting *Minnesota Ctr. for Envtl. Advocacy v. Minn. Pollution Control Agency*, 644 N.W.2d 457, 466 (Minn. 2002)).

In this case, Clark testified that, while Hagen was in her office on October 21, 2015, she stated, "I can't do this anymore; I'm gonna submit my resignation."  Moore testified that, after Hagen expressed concerns about her job, she said that "she was gonna put her

7

resignation in and walked out." Both Clark and Moore testified that Hagen packed up some of her personal items and left. A contemporaneous internal memorandum, which is signed by both Clark and Moore, describes those events in substantially similar fashion. This body of evidence constitutes substantial evidence to support the ULJ's finding that Hagen quit her employment.

Thus, the ULJ did not err in making credibility determinations, and there is substantial evidence in the record to support the finding that Hagen quit her employment.

## II. Additional Hearing

Hagen also argues that the ULJ erred by preventing her from eliciting additional testimony by Anderson concerning Moore's actions toward other FFRS employees and by not ordering an additional hearing after she requested reconsideration.

Hagen first contends that the ULJ erred on the ground that the additional evidence she sought to introduce is admissible to show that "Moore had a 'modus operandi' of firing employees, and then telling others that they quit." Hagen relies on rule 404(b) of the Minnesota Rules of Evidence. But the legislature has allowed the department to "adopt rules on procedures for hearings under Minnesota Rules, chapter 3310," which "need not conform to common law or statutory rules of evidence and other technical rules of procedure." Minn. Stat. § 268.105, subd. 1(b) (2014). Pursuant to that statute, the department has adopted an administrative rule that gives ULJs wide latitude in the admission or exclusion of evidence:

> An unemployment law judge may receive any evidence that possesses probative value, including hearsay, if it is the type of evidence on which reasonable, prudent persons are accustomed

8

> to rely in the conduct of their serious affairs. An unemployment law judge may exclude any evidence that is irrelevant, immaterial, unreliable, or unduly repetitious. An unemployment law judge is not bound by statutory and common law rules of evidence. The rules of evidence may be used as a guide in a determination of the quality and priority of evidence offered.

Minn. R. 3310.2922 (2013). In light of this administrative rule, Hagen cannot establish that the ULJ erred by misapplying rule 404(b) of the rules of evidence because the ULJ was not bound by rule 404(b).

In any event, the record indicates that, contrary to Hagen's argument, the ULJ gave her an opportunity to introduce somewhat peripheral evidence concerning another former FFRS employee for the purpose of proving that she actually was fired by Moore. The ULJ allowed Hagen to introduce Anderson's testimony concerning another employee, D.B., but Anderson's testimony did not conform to Hagen's proffer. The ULJ prevented Hagen from introducing additional testimony from Anderson after it appeared that Anderson could not give testimony to support Hagen's specific claim concerning other former FFRS employees. The ULJ's limitation on Hagen's evidence was reasonable in light of the applicable administrative rule, which states, "An unemployment law judge may exclude any evidence that is irrelevant, immaterial, unreliable, or unduly repetitious." Minn. R. 3310.2922.

Hagen also contends that the ULJ should have given her an additional hearing after she requested reconsideration. A ULJ must order an additional hearing if a party seeking reconsideration shows, among other things, "that evidence which was not submitted at the hearing . . . would likely change the outcome of the decision." Minn. Stat. § 268.105,

9

subd. 2(c)(1) (2014).  Hagen's request for reconsideration does not satisfy this requirement. Hagen submitted a written statement of Anderson, but the statement does not state that Moore fired other employees but later claimed that the employees had quit.  Thus, the ULJ did not err by limiting Hagen's examination of Anderson and by not ordering an additional hearing.

In sum, the ULJ did not err by determining that Hagen is ineligible for unemployment benefits.

**Affirmed.**