*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0476**

Betty D. Tuolee,
Relator,

vs.

BKD Employee Services, LLC,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed November 23, 2015
Affirmed
Hooten, Judge**

Department of Employment and Economic Development
File No. 32911790-4

Thomas H. Boyd, Catherine M. Cumming, certified student attorney, Winthrop & Weinstine, P.A., Minneapolis, Minnesota (for relator)

BKD Employee Services, Inc., Nashville, Tennessee (pro se respondent)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Chutich, Presiding Judge; Bjorkman, Judge; and Hooten, Judge.

UNPUBLISHED OPINION

**HOOTEN**, Judge

Relator challenges the decision of an unemployment law judge (ULJ) that she is ineligible for unemployment benefits because she was discharged for employment misconduct, arguing that the ULJ's credibility determinations are unsupported by the record and inadequate and that the alleged single incident does not rise to the level of misconduct. We affirm.

## FACTS

Relator Betty D. Tuolee worked as a resident assistant for respondent BKD Employment Services, LLC, an assisted-living community specializing in dementia care. Tuolee was employed by BKD from March 11, 2014, until she was discharged in August 2014. Tuolee worked the overnight shift, and her duties included doing laundry, cleaning, and caring for and ensuring the safety of the residents. BKD's policies prohibit its employees from "sleeping or appearing to sleep in common areas while on the job during working time or paid break periods, or at any time." Prior to starting her employment, Tuolee was notified of BKD's policies and signed an acknowledgement that she received a copy of the employee handbook. At approximately 4:00 a.m. on August 14, 2014, a maintenance technician observed Tuolee sleeping on a couch in a common area during her work hours. The technician reported the incident to the executive director, and Tuolee was immediately discharged.

Tuolee applied for unemployment benefits. In her application, Tuolee denied sleeping on the job, explaining that she had merely been resting when on her break.

2

Respondent Minnesota Department of Employment and Economic Development (DEED) made an initial determination that Tuolee was eligible for benefits because her actions "were not employment misconduct because they were not intentional or negligent." BKD filed an administrative appeal, and a ULJ conducted a de novo hearing.

At the hearing, the maintenance technician testified that on August 14, 2014, at approximately 4:00 a.m., he came into work early and saw an employee he did not know, later identified to be Tuolee, lying horizontally on the couch in the common area with her feet off the ground. He testified that Tuolee had her eyes closed and that he stood over her for approximately one minute before trying to speak with her. He stated that he attempted to speak with Tuolee a few times before she awoke and that when she awoke she "seemed startled and asked what was going on." The maintenance technician told Tuolee that he had observed her sleeping, but she denied being asleep. He testified that he reported the incident to the executive director because, due to the nature of their facility and its residents, employees "need to be awake and alert for safety."

Tuolee testified that she was sitting on the couch folding clothes when the maintenance technician came in. She denied sleeping and stated that she did not suffer from any medical condition that would cause her to fall asleep.

The executive director testified that, when she spoke with Tuolee about the incident, Tuolee initially denied sleeping. She said that Tuolee, after being told of the maintenance technician's claim that he had observed her sleeping, said, "[O]h well I was on my break." The executive director noted that employees could sleep or appear to be sleeping only in the break room and that Tuolee was not in the break room when she was

3

observed sleeping. She testified that if Tuolee had merely been watching television in the common area, the outcome would have been different, but that Tuolee was discharged because she was observed sleeping. Tuolee had not received any prior warnings or reprimands before she was discharged.

The ULJ determined that Tuolee was ineligible for unemployment benefits because she "was sleeping on the job in violation of the employer's policy and that this policy violation is a serious violation of standards of behavior that this employer had a right to expect of Tuolee, given her responsibility to ensure the safety of the residents." Tuolee filed a request for reconsideration, stating that she was on her break and was sitting on the couch when the maintenance technician entered and that she walked toward him to speak with him. The ULJ affirmed his previous determination that Tuolee was discharged for employment misconduct. This certiorari appeal followed.

## D E C I S I O N

The purpose of chapter 268 is to provide workers who are unemployed through no fault of their own with a temporary partial wage to assist them in becoming reemployed. Minn. Stat. § 268.03 (2014). An employee who was discharged is eligible for unemployment benefits unless the discharge was for employment misconduct. Minn. Stat. § 268.095, subd. 4(1) (2014). Under Minnesota law, "[e]mployment misconduct means any intentional, negligent, or indifferent conduct . . . that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." Minn. Stat. § 268.095, subd. 6(a) (2014). In determining whether someone qualifies for

4

unemployment benefits, this court is guided by the principles that the unemployment benefits statutes are "remedial in nature" and that "any statutory provision that would preclude an applicant from receiving benefits must be narrowly construed." Minn. Stat. § 268.031 (2014).

"Whether an employee engaged in conduct that disqualifies the employee from unemployment benefits is a mixed question of fact and law." *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011) (quotation omitted). Whether an employee committed an act is a question of fact. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). We review the ULJ's findings of fact in the light most favorable to the decision and give deference to the ULJ's credibility determinations. *Id.* We review de novo the question of whether the employee's acts constitute employment misconduct. *Stagg*, 796 N.W.2d at 315.

When reviewing the decision of a ULJ, this court "may affirm the decision of the unemployment law judge or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the [relator] may have been prejudiced because the findings, inferences, conclusion, or decision" are unsupported by substantial evidence in the record. Minn. Stat. § 268.105, subd. 7(d) (Supp. 2015). Substantial evidence is defined as "(1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; or (5) the evidence considered in its entirety." *Dourney v. CMAK Corp.*, 796 N.W.2d 537, 539 (Minn. App. 2011) (quotation omitted).

5

## I.

Tuolee challenges the ULJ's determination that the maintenance technician's testimony was more credible than her testimony. The ULJ must make credibility findings when such findings are central to the ULJ's decision. *Wichmann v. Travalia & U.S. Directives, Inc.*, 729 N.W.2d 23, 29 (Minn. App. 2007). It is undisputed that credibility is critical to the outcome of this case. This court defers to the ULJ's credibility determinations when (1) they are supported by substantial evidence, and (2) the ULJ provides a valid reason for crediting or discrediting testimony that may significantly affect the ultimate decision. *See Ywswf v. Teleplan Wireless Servs., Inc.*, 726 N.W.2d 525, 533 (Minn. App. 2007); *see also* Minn. Stat. § 268.105, subd. 1a(a) (2014) (providing that the ULJ must "set out the reason for crediting or discrediting" testimony if the witness's credibility "has a significant effect on the outcome of a decision").

Tuolee argues that there was no substantial evidence to support the ULJ's finding of fact that Tuolee fell asleep because the testimony that the ULJ credited, the maintenance technician's testimony, was not plausible. Tuolee argues that his "testimony that he stood over an allegedly sleeping woman, whom he did not know, for a full minute, waiting for her to wake up is farfetched and unreasonable." We disagree.

The maintenance technician testified that when he entered the common area he observed Tuolee sleeping on a couch in a common area, he stood over her for approximately one minute, and he eventually woke her by trying to speak with her. The ULJ, after weighing all of the testimony, found his testimony credible. Furthermore, the maintenance technician's testimony that he stood over Tuolee for a minute, rather than

seeming unreasonable or implausible, seems consistent with a desire to be certain that Tuolee was asleep before confronting her and reporting her behavior to management.

Additionally, Tuolee was inconsistent in explaining what had occurred. In her application for unemployment benefits, Tuolee stated that she was not sleeping, but was resting while she was on her break. At the hearing, however, Tuolee testified that she had been sitting on a couch in the common room folding clothes when the maintenance technician walked in. But, the executive director testified that when Tuolee was told about the maintenance technician's report, Tuolee initially denied sleeping, but then stated, "[O]h well I was on my break." Given the reasonableness of the maintenance technician's version of the incident and the inconsistencies of Tuolee's, we conclude that the ULJ's credibility determination was supported by substantial evidence.

Tuolee next argues that the ULJ failed to put forth sufficient reasons for crediting or discrediting the witnesses' testimony. The ULJ stated that he found the maintenance technician's testimony to be more credible than Tuolee's because he "would have no clear reason for lying." Furthermore, the ULJ found that Tuolee's testimony was "self-serving and somewhat conflicting, in that she also testified that she was on break, presumably suggesting that it was okay for her to sleep." The ULJ also observed that Tuolee's suggestion that being on break would make it acceptable to be asleep in the common area was inconsistent with the testimony of BKD's executive director, who stated that it would never be acceptable to sleep in a common area.

Tuolee argues that these credibility findings "fail[] to set forth the reasons for a credibility determination and fail[] to satisfy the statute's requirements." But, the ULJ's

7

credibility findings directly touch on the witnesses' interests in the case and the lack of corroboration of Tuolee's testimony, both listed in *Ywswf* as factors to be considered in determining credibility. 726 N.W.2d at 532–33. We hold that the ULJ's credibility determinations were sufficient to meet the statutory requirement.

## II.

Tuolee argues that a single incident of sleeping on the job does not constitute employment misconduct under Minn. Stat. § 268.095, subd. 6(a). "If the conduct for which the [employee] was discharged involved only a single incident, that is an important fact that must be considered in deciding whether the conduct rises to the level of employment misconduct. . . ." *Id.*, subd. 6(d) (2014).

Tuolee contends that there was no evidence that she intentionally or willfully violated her employer's policy and that the incident for which she was terminated was a single incident of misconduct in an otherwise unblemished record. "Because the nature of an employer's interest will vary depending upon the job, what constitutes disregard of that interest, and therefore misconduct, will also vary." *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 806 (Minn. 2002) (quotation omitted). A single incident may constitute misconduct "if it represents a sufficient enough disregard for the employer's expectations." *Blau v. Masters Rest. Assocs., Inc.*, 345 N.W.2d 791, 794 (Minn. App. 1984). A single incident that demonstrates that the employer can no longer trust the employee with the "essential functions of the job" is sufficient to warrant a determination of employment misconduct. *See Skarhus*, 721 N.W.2d at 344 (considering the issue

8

under the then-existing single incident exception to the statutory definition of employment misconduct).

Tuolee's job was to care for vulnerable adults who could be harmed if they got out of bed and wandered around unsupervised. Tuolee herself acknowledged the importance of keeping close watch of the residents because they were vulnerable adults who could get up during the night. On the overnight shift, four staff members were responsible for the welfare of 47 residents. The executive director testified that it was "absolutely essential" that the employees stay awake because of the vulnerability of the residents. Because of their vulnerability, the safety of the residents is impaired if a staff member falls asleep, even if the staff member sleeps only on one occasion. By sleeping while at work, even only on one occasion, Tuolee seriously violated the standards of behavior required at the assisted-living community. Because the August 14, 2014 incident alone constitutes employment misconduct, the ULJ did not err in determining that Tuolee was not eligible for unemployment benefits.

**Affirmed.**